PARIENTE, J.,
concurring.
I join the majority opinion in concluding that none of the challenged provisions of the Timely Justice Act of 2013 facially violate the Florida Constitution. I write separately only to emphasize that nothing within the Act alters or affects this Court’s solemn responsibility to issue a stay of execution if required to ensure adequate and complete judicial review of a defendant’s claims alleging a violation of his or her constitutional rights.
As noted by the State in its response to the petition, this Court is still constitutionally entrusted with the duty to issue a stay of execution if there is a meritorious post-conviction claim pending or, if at the time the warrant is signed, the defendant brings a successive postconviction challenge that casts doubt on his or her guilt, the integrity of the judicial process, or the validity of the death sentence imposed. See Response to Emergency Petition for Extraordinary Relief at 28, Abdool v. Bondi, No. SC13-1123 (Fla. July 18, 2013) (“[T]he inherent power of the judiciary to grant a stay of execution where necessary can protect any litigants from being denied adequate judicial review of a cognizable claim. Therefore, facial invalidity of the statute is not demonstrated by speculation of a potential unconstitutional application of the Act.”). In my view, that remains the essential fail-safe mechanism this Court may utilize when necessary to ensure that the ultimate punishment of the death penalty is inflicted in a manner that fully comports with the Constitution.
Indeed, although rare and undertaken with the utmost of thoughtful review, this Court has granted relief to death-sentenced defendants bringing successive postconviction claims when newly discovered evidence establishes, perhaps even decades after the crime, that “the totality of *556 the evidence is of ‘such nature that it would probably produce an acquittal on retrial’ because the newly discovered evidence ‘weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.’ ” Swafford v. State, 125 So.3d 760, 762-63 (Fla.2013) (quoting Jones v. State, 709 So.2d 512, 523, 526 (Fla.1998)). It is not unprecedented, in fact, for relief to be granted even after a death warrant is signed.
For example, in Johnson v. State, 44 So.3d 51, 56 (Fla.2010), this Court reviewed the denial of a death-sentenced defendant’s second successive motion for postconviction relief, which was pending on appeal in this Court at the time his death warrant was signed. This Court issued a stay of execution to consider Johnson’s successive postconviction claim, which was based on newly discovered evidence showing that the prosecutor “knowingly used false testimony and misleading argument to convince the court to admit” evidence that the prosecutor knew was inadmissible. Id. at 53. We held that “[t]he prosecutor’s misconduct obfuscated the truth-seeking function of the court and compromised the integrity of the subsequent proceedings,” therefore requiring the death sentences to be vacated based on Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Johnson, 44 So.3d at 53-54. Reversal of the death sentences in Johnson was “the only option available to this Court” to ensure that the defendant was not executed after his constitutional rights to due process and a fair trial were violated. Id. at 54.
Recent cases such as Johnson and Swaf-ford demonstrate this Court’s commitment to thorough judicial review of death penalty cases throughout the course of proceedings, even after a death warrant has been signed, and even though we ultimately reject the vast majority of successive post-conviction claims that come before us. In practice, the Governor is cognizant of this Court’s role in ensuring that the defendant has had every opportunity to litigate any potentially meritorious claims, and generally refrains from signing a death warrant for any inmate who is actively engaged in litigation that may cast doubt on the validity of the conviction or sentence.[9]
I am confident that, as has already been the case after the Act took effect in July 2013, the implementation of the Act will not affect this Court’s ability to review any claims either pending at the time of, or raised after the issuance of, a death warrant. If a defendant believes that his or her constitutional rights have been violated or that complete judicial review has not occurred, there is certainly nothing in this Court’s opinion upholding the facial constitutionality of the Act in this case that precludes a defendant from raising an as-applied constitutional challenge to the validity of the Act, and there is nothing in *557 the Act that prevents this Court from issuing a stay of execution if necessary.
LABARGA and PERRY, JJ., concur.

. In fact, the vast majority of the death warrants signed over the last several years have been for defendants who did not have any active litigation or postconviction motions pending at all, including John Henry, Robert Hendrix, Robert Henry, Juan Chavez, Darius Kimbrough, William Happ, and numerous others. Although many of these inmates filed claims subsequent to the issuance of the warrant, generally the claims presented have concerned challenges to the lethal injection protocols or other purely legal issues that do not cast doubt on the defendant's guilt or on the integrity of the judicial process. See, e.g., Chavez v. State, 132 So.3d 826 (Fla.) (challenging the lethal injection protocol, the denial of public records requests, and the sufficiency of clemency proceedings), cert. denied, - U.S. -, 134 S.Ct. 1156, - L.Ed.2d - (2014); Kimbrough v. State, 125 So.3d 752 (Fla.) (presenting the single claim that Florida's death penalty statute violates the Eighth Amendment), cert. denied, - U.S. -, 134 S.Ct. 632, 187 L.Ed.2d 412 (2013).